## PIERCE *vs.* WILSON.

[BILL IN EQUITY FOR RESCISSION OF CONTRACT ON GROUND OF FRAUD.]

1. *When equity will rescind contract on account of fraud.*—A contract for the sale of the patent right to make, use and vend, within a specified territory, an improved kind of loom, will be rescinded in equity, on the timely application of the purchaser, on proof that the vendor, who was also the inventor, grossly misrepresented the capacity of the loom and his own success in selling and put it in operation ; and that the purchaser, being ignorant of these matters, was induced by these misrepresentations to enter into the contract.

2. *Waiver of right of rescission by laches and subsequent ratification.*—Where the contract was made on the 8th June, 1853 ; and the vendor's representations respecting the subject of the sale—the patent right for an improvement in looms—related to its adaptedness to be worked by hand, and to be driven by machinery in factories ; and the purchaser, having discovered the falsity of the former representations, proposed a rescission in November, 1853, which the vendor declined ; and the purchaser afterwards made renewed efforts to obtain a model loom, of the size and description specified in the contract, and also endeavored to sell looms in the district of country embraced in his purchase, representing that they could be successfully worked by machinery in factories ; and, having failed in all his efforts, filed his bill to rescind in February, 1856,—*held*, that there was nothing in these circumstances which amounted to a waiver or forfeiture of the right of rescission, which had been duly perfected by the offer to rescind in November, 1853.

3. *Admissibility of parol evidence to vary or contradict writing.*—The rule which forbids the admission of parol evidence, to add to, vary or contradict a written instrument, does not apply where the rescission of a contract is sought in equity on the ground of fraud.

4. *Variance.*—It was objected in this case, that there was a fatal variance between the allegations and proof, because the bill alleged one entire contract, while the proof showed two distinct contracts ; but the court held, that the evidence established one entire contract, as stated in the bill, although several writings were executed between the parties, which did not refer to each other.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by William F. Pierce, against John Wilson and Richard Davis, on the 22d February, 1856 ; and sought to obtain the rescission of a

contract, by which the complainant purchased from said Wilson the right to make, use and vend, within the State of Tennessee, "a certain improvement in looms," for which said Wilson had obtained a patent from the United States on the 29th May, 1849; and also to enjoin an action at law on the note given for a part of the purchase-money, instituted by Davis, as assignee of Wilson. The contract was made in the town of Eutaw, Alabama, on the 8th June, 1853. . The terms of the contract, and the representations of Wilson which induced the complainant to enter into it, are thus stated in the bill:

"2. And your orator further showeth, that the said Wilson, to induce your orator to purchase his said patent right for the State of Tennessee, represented to and assured him that a loom of proper size, constructed on the principle of his said patent, and after the plan of a model exhibited by him in the town of Eutaw, which seemed to perform well, weaving cloth about a quarter of a yard wide, could be operated and worked by any ordinary hand; that an ordinary negro slave could, with said loom, weave good, substantial, plain cloth, one yard wide, at the rate of three yards per hour, or thirty yards per day; that the machinery of said loom was not liable to get out of order by use, so as to need frequent repairs; that it was well adapted to be worked by hand, or to be driven by machinery in factories; and that a loom constructed on the principle of said patent, and after said model, with an additional expense of five dollars in its construction, would weave good jeans, or double cloth. And when your orator expressed his apprehension that the loom, when made of proper size to weave cloth a yard wide, might not perform well, and inquired why he had not put said loom in successful operation before that time, said Wilson assured your orator that there could be no doubt or difficulty on that subject; that his looms had been tried and proved; that he had sold and put up seven hundred looms under his said patent in the State of South Carolina, where he lived, and they were then in successful operation.

"3. And your orator further showeth, that he verily

believes, and therefore charges, that the said representations, statements and assurances of said Wilson, in relation to his said loom, were untrue; that said Wilson knew them to be untrue when he made them, and made them for the purpose of deceiving and defrauding your orator in that behalf; that looms made upon the principle of said patent, and after the model exhibited by him in the town of Eutaw, and of a proper size, would not in fact weave good, plain cloth, one yard wide, at the rate of thirty yards per day, under the superintendence of an ordinary hand, and could not be operated by an ordinary negro slave; nor could said looms, with an additional expense of five dollars, be made to weave good jeans, or double cloth ; nor were they adapted to be used as power-looms in factories; nor had he in fact put up seven hundred looms, or any other number, which were then in successful operation in South Carolina.   But your orator, not being a machinist, and relying upon the said false and fraudulent representations of said Wilson, and believing them to be true, was induced to purchase, and did purchase from said Wilson, his patent right for said looms for the State of Tennessee, and took from said Wilson a transfer of his said patent for said State, and executed to said Wilson his promissory note for $1500, and also a deed of conveyance for your orator's house and lot in Eutaw, copies of which transfer, deed and note are hereto attached, marked A, B, C, respectively, and prayed to be taken as a part of this bill.

"4. And your orator further showeth, that as a part of the said contract between him and said Wilson for the sale of said patent right, and for the same consideration, said Wilson undertook and agreed to have constructed under his own superintendence, on the principle of the model loom exhibited by him as aforesaid, a good model loom of proper size to weave cloth one yard wide, and to deliver the same to your orator, in the city of Montgomery, on or before the 1st November, 1853, so that your orator would have a proper model, and could at once proceed to have looms built, and commence his operations and sales

Pierce v. Wilson.

in the State of Tennessee; your orator agreeing to pay fifty dollars for the expense of constructing said loom. And your orator charges, that said Wilson, in pursuance of his said agreement, did contract for the building of a loom in Montgomery for your orator, of proper size to weave cloth one yard wide, and notified your orator that the same would be ready by the first day of August; and your orator went there, about that time, to receive said loom, and found that it would not operate or perform so as to be of any value whatever, nor would it weave cloth as said Wilson had represented, but entirely failed to meet his representations; and said Wilson never did, either at Montgomery or elsewhere, deliver to your orator a model loom as he had contracted to do," &c.

The bill further alleged, that the complainant, in November, 1853, through his agent, offered to rescind the contract, but said Wilson refused to do so; that he afterwards made repeated, but unsuccessful efforts, at his own expense, to obtain a model loom; that the invention is entirely valueless, and he has never been able to sell a single loom, nor has he realized anything from his said purchase. The prayer of the bill was for a rescission of the contract, the cancellation of the deed for the house and lot, an injunction of the action at law on the note, and general relief.

The defendants filed separate answers. Each insisted, that the contract was not correctly set forth in the bill; and that the agreement for the delivery of the model loom was a distinct contract, founded on a new consideration, and evidenced by a writing which made no reference to the contract for the sale of the patent right. This writing, which was made an exhibit to the answer of the respondent Wilson, was in the following words:

"Mr. John Wilson has agreed to deliver me a loom, according to improved patent obtained 29th May, 1849, by the 1st day of August, if he possibly can; and if the said loom is delivered to me, in Montgomery, by the 1st day of November next, then I promise and bind myself to pay him the sum of fifty dollars for the same; but the

said loom is to be delivered at as early a day as he can have it made. June 8, 1853."·

(Signed) " Wm. F. Pierce."

Wilson denied all the charges of fraud and misrepresentation; alleged that his statements respecting his patent loom, which were publicly made in the town of Eutaw, were true; that the complainant was induced to make the purchase, not by any representations of said respondent,. but by the fact that other persons in Eutaw, in whose judgment he reposed confidence, had bought the right to make and sell the loom in Alabama and Mississippi; and insisted that the complainant, if he had ever perfected any right of rescission, had waived that right by his subsequent conduct and declarations.

Davis stated in his answer, that he purchased the complainant's note for $1500 from Wilson, on or about ·the 10th June, 1853; that he afterwards informed the complainant that he was the holder of the note, and inquired whether he would pay it at maturity; that the complainant returned an evasive answer, and said that he could not then tell whether he would pay the note or not; and that he afterwards agreed to, and did accept service of the the writ in the action instituted on the note. He also demurred to the bill, for multifariousness, and because the complainant had a complete remedy at law.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, on the ground that the complainant, if he ever had any right of rescission, had forfeited that right by his repeated efforts to sell the loom in Tennessee after his·offer to rescind the contract; and his decree is now assigned as error.

S. F. Hale, and Jno. G. Pierce, for appellant:

1. Fraud constitutes one of the original grounds for the interposition of a court of chancery, whether it consists in the suggestion of falsehood, the suppression of truth, or false statements recklessly made. In this case, the bill makes out a clear case for the rescission of the contract on the ground of fraud, and the proof fully sustains the bill. The utmost good faith was required on

the part of the vendor, because, being himself the inventor, he had special knowledge of the subject-matter of the contract, while the purchaser was entirely ignorant on the subject, and, therefore, bound to rely on the statements of his vendor. The defendant's representations as to the capacities of his improved loom, and his success in putting it into operation in South Carolina, constituted a material inducement to the purchase ; and the falsity of these representations, which is clearly established by the evidence, entitles him to a rescission.—Adams on Equity, 421; Foster v. Gressett's Heirs, 29 Ala. 393 ; Munroe v. Pritchett, 16 Ala. 789; Read v. Walker, 18 Ala. 324; 2 Ala. 603; Smith v. Richards, 13 Peters, 26 ; 15 Ill. 148; 2 Story's Equity, §§ 694–5; 1 Dana, 30; 3 Ala. 237.

2. The general rule is, that a party who seeks the rescission of a contract, on the ground of fraud, must offer to rescind, and tender back the property, within a reasonable time; but what is a reasonable time, depends on the circumstances of each case.—Kern v. Burnham, 28 Ala. 428; Foster v. Gressett's Heirs, 29 Ala. 393. In this case, the complainant brought himself within the strict letter of the rule, by his immediate and repeated offers to rescind ; and there is nothing in his subsequent conduct which amounts to a waiver or abandonment of the right of rescission thereby perfected. His subsequent endeavors to sell, and to get the loom tested in Tennessee, were made in good faith, before he had ascertained the entire falsity of all the defendant's representations, and when he had the right thus to test their truth ; and the defendant was in no wise injured by them. Before a defrauded party will be held to have waived his right of rescission, duly perfected by a timely offer to rescind, his subsequent conduct must be shown to have been with a full knowledge of all the facts, and with the intent to confirm the invalid contract.—Johnston v. Johnston, 5 Ala. 96 ; Calloway v. McElroy, 3 Ala. 408.

3. But, even if the first offer to rescind was waived and abandoned, that does not affect the complainant's right to rescind on his subsequent discovery of the fraud in the second class of representations, to-wit, those which related

to the capacity of the loom to be operated by machinery
in factories; nor was it necessary, on the discovery of
that fraud, to make another offer to rescind, as the chan-
cellor thought was necessary. The discovery of the
second fraud remitted the complainant to his right of
rescission already perfected. Moreover, the respondent's
conduct showed that he would again refuse an offer to
rescind; and the law does not require a party to do a
useless thing. The proof shows, too, that the invention
which was the subject of the sale is perfectly valueless;
and in such case an offer to rescind is unnecessary. If
any offer was necessary, the tender in the bill is sufficient.
On these points see the following authorities: Griggs v.
Woodruff, 14 Ala. 19; Elliott v. Boaz, 9 Ala. 779; Bar-
nett v. Stanton, 2 Ala. 181.

4. The proof sustains all the allegations of the bill as
to the material stipulations of the contract. If there is
any variance, it is as to mere collateral and immaterial
matters.—26 Ala. 312; 25 Ala. 554.

J. D. WEBB, and R. F. INGE, contra.—1. A misrepre-
sentation, to constitute a fraud, must relate to a material
fact, going to the essence or subject-matter of the con-
tract, must actually mislead and injure the purchaser,
and the contract must be based upon such misrepresent-
ation.—Story's Equity, 204, 208, 211; 29 Ala. 393;
Story on Contracts, § 507,; Parsons on Contracts, 266-7;
Chitty on Contracts, 689; Atwood v. Small, 6 Cl. & F.
232; 12 East, 437–8; Buls. 95; Foster v. Charles, 6 Bing.
396. Under these authorities, the defendant's represent-
ations respecting the number of looms which he had put
in successful operation in South Carolina, if untrue, do
not authorize a rescission of the contract on the ground
of fraud. That was a matter outside of the contract—it
did not affect the value of the loom, nor did it in any wise
injure the purchaser; and the proof shows that, instead
of these representations constituting an inducement to
the purchase, the complainant was led to make the pur-
chase by the fact that other men, well known to him,
and in whose judgment he had confidence, had made sim-

ilar contracts for other States. The defendant's other representations, respecting the capacity of the loom, are proved to have been correct by the testimony of several witnesses, and by the complainant's own declarations.

2. If any right of rescission ever existed, it has been lost and forfeited. To authorize a rescission on the ground of fraud, the party must act promptly on the discovery of the fraud; must make an offer to return the property, and must not exercise any subsequent acts of ownership over it.—Barnett v. Stanton & Pollard, 2 Ala. 189; Dill v. Camp, 22 Ala. 259; Sto. on Con. § 168. The proof shows that, in March, 1854, long after the discovery of the alleged fraud, the complainant purchased a model loom, constructed on the principle of Wilson's patent, carried it to Tennessee, and there offered to sell it; and declared, on his return, that its performance in factories even exceeded Wilson's representations.

3. There is a fatal variance between the allegations and proof. The bill alleges one entire contract, founded on one and the same consideration, for the purchase of the patent right and the furnishing of a model loom by a specified day; while the proof shows two distinct contracts, founded on separate and distinct considerations, and evidenced by different writings, which do not even refer to each other.—Evans v. Battle, 19 Ala. 398; Crothers v. Lee, 29 Ala. 237; Crabb's Adm'r v. Thomas, 25 Ala. 212; 28 Ala. 613.

RICE, C. J.—In 1849, the respondent, Wilson, obtained letters patent of the United States, for certain improvements in looms. On or about the 8th day of June, 1853, in this State, he sold and assigned to complainant all the right, title and interest which he had in said invention so secured to him by the letters patent, "for, to, and in the State of Tennessee, within its entire limits, and in no other place," to be held and enjoyed by complainant as fully and entirely as the same could have been held and enjoyed by the said Wilson, had the said sale and assignment not been made.

The complainant seeks a rescission of that sale; and

from the allegations of his bill, and the proofs in the cause, it appears that he, being ignorant of the qualities of the subject of the sale, was induced to make the purchase by the fraudulent misrepresentations of the said Wilson, in regard to material facts and matters, such, for instance, as the qualities of the subject of the sale; that the complainant had the right to rely upon these misrepresentations as truthful representations, and did rely upon them as true, and was thereby deceived and injured. The complainant is, therefore, entitled to a rescission of the sale, unless he has lost his right to a rescission by an affirmance of the contract after the discovery of the fraud, or by a failure · to manifest the election to disaffirm it within a reasonable time after such discovery.—Foster v. Gressett, 29 Ala. 393, and cases there cited; Kern v. Burnham, 28 *ib.* 428 ; Couse v. Boyles, 3 Green's Ch. R. 212.

It is too clear for argument, that nothing said or done by him since the full discovery of the fraud amounts to an affirmance of the contract; and that upon the facts as presented by the record, and under the settled law of this State, there has not been any affirmance or confirmation of the contract by any act of the complainant since he acquired knowledge of the fraud.—Thompson v. Lee, 31 Ala. 292 ; Huckabee v. Albritton, 10 Ala. 657 ; Boyce v. Grundy, 3 Peters, 210.

We come, then, to the question, whether the complainant's right of rescission has been lost by a failure to manifest the election to disaffirm the contract within a reasonable time. It is settled by the cases first above cited, that what is a reasonable time must be determined from the circumstances of the particular case. Now, in this case, the following circumstances seem to us to be of controlling importance: The vendor was the inventor of the improvement in the machine, (the loom.) He had thoroughly tested its qualities, and was perfectly acquainted with them. He had procured letters patent for his invention and improvement. He was a citizen of South Carolina. He came to Alabama, and here made his offer to sell to the complainant, a citizen of this State, who was wholly ignorant of the falsity of the representations

of the vendor. His representations were of, at least, *two classes*, to-wit, those which related to the capability of the machine for being profitably worked by any ordinary hand or negro slave, and those which related to its capability and adaption, by a slight additional expense in its construction, for being profitably used and driven by machinery in factories. His representations were of the most positive character, and as well framed, in the various turns of the negotiation for the sale, for quieting the apprehensions and commanding the reliance and faith of the complainant, as they well could have been. The discovery of the falsity of *one class* of his representations would not necessarily imply a discovery of the falsity of *the other* class. The nature of the machine, and of the representations, was such that one or two experiments, to ascertain the qualities and capabilities of the machine, might reasonably be regarded as not furnishing a decisive test of its qualities and capabilities, or satisfactory proof of the falsity of each class of the positive representations of the vendor. The vendee was, to some extent, delayed in making such experiments by the artifices of the vendor. Not long after the sale, the vendor had returned to his residence in South Carolina. In September, 1853, (about three months after the sale,) the complainant, by his agent, having discovered in South Carolina the falsity of *one class* of the vendor's representations, proposed to the vendor to rescind the contract; and thereupon Wilson agreed, that if he did not furnish a certain model loom by the 1st of November, 1853, the contract should be rescinded. On said 1st of November, 1853, the vendor having failed to furnish the model loom, the complainant, by his agent, offered to the vendor to rescind said contract, and to surrender up his aforesaid transfer of the patent right; but the vendor refused to rescind. At that time, the complainant had not by any experiment discovered the falsity of *one class* of the vendor's representations, to-wit, those relating to the capabilities of the machine for being well worked and driven by machinery in factories. The vendor having refused to rescind, the vendee proceeded at his own expense, without unreasonable delay, to have

the capabilities of the machine for being worked and driven by machinery tested by actual experiments; and after ascertaining by these experiments the falsity of the .vendor's representations in that respect, and being sued by the transferree of the vendor upon a note given for part of the purchase-money, but never having been put out of possession of the house and lot, which was to go to the vendor, Wilson, as part of the price for the patent right, the vendee filed his bill for relief.

But it is said, that Pierce *offered* to sell in Tennessee, and that he made declarations to the effect that the patent right and machine were of great value. Admit all that; still, he had a clear right to test, not merely once, but fully, the value of the patent right and of the machine, and the truth or falsity of *each class* of the representations of Wilson. A mere *offer* by Pierce to sell, without effecting any sale, and declarations by him as to the value of the machine, made after he had learned and believed the falsity of every class, save one, of Wilson's representations, but before he had, by experiments and tests, ascertained the falsity of that single class, cannot constitute an answer, in a court of equity, to Pierce's claim to rescission—a claim supported by the previous timely offer of rescission and actual tender back of the transfer of the patent right, made by Pierce and refused by Wilson, and by the well known determination of Wilson not to rescind or receive back the transfer of the patent right. A defrauded vendee, who has rendered perfect his right *to claim a rescission in a court of equity*, by a timely offer of rescission and tender back of the thing received by him under his purchase, cannot lose *that right* by mere declarations as to the value of the thing he had bought, nor by unavailing efforts to dispose of it, when it is clear that such declarations and such efforts could not, and did not in any way mislead or injure the vendor, or any one claiming through him under the fraudulent contract; and that the determination of the vendor not to rescind or receive back the thing sold was well known at and before such declarations and efforts were made, and was in no way

changed or affected by them.—See Dill v. Camp, 22 Ala. 249, and cases therein cited; also, the cases cited *supra*.

The complainant is here proceeding, *not upon a contract*, but for *a fraud* practiced upon him in a contract made between him and Wilson.. He claims a rescission on account of that fraud. By the very nature of his case, he is authorized to show that the contract really made was different from that shown by the writings executed by the parties. The rule, that parol evidence cannot be resorted to, to vary, contradict, or explain written instruments, does not apply to the case. The very fact, that there is a material difference between the contract really made by the parties and the contract which might be inferred from the written instruments, is a circumstance which, with others, may be urged, in a case like this, to prove the fraud complained of.—Dixon v. Barclay, 22 Ala. 370; Cowles v. Townsend & Milliken, 31 Ala. 133, and cases therein cited.

In suits for specific performance, the rule which exacts a correspondence between the allegations and proof of the terms of the contract, is adhered to with great strictness. Williams v. Barnes, 28 Ala. 613. In suits for the rescission of contracts on account of fraud, that rule is not applied with the same strictness.—Lanier v. Hill, 25 Ala. 554. We do not think there is any fatal variance here between the allegations and proof.

We are satisfied that the complainant is entitled to a decree rescinding the sale. If Wilson had never transferred the note given to him by Pierce for a part of the purchase-money, it is clear that Wilson could not be permitted, by a court of equity, to enforce that note against Pierce; and there is nothing shown in the answer of the transferree, Davis, which gives him any better right to enforce the note than his transferror would have if he had never transferred it. Pierce did not induce Davis to buy the note, and has not done anything that precludes, him from urging against Davis the same objections to the enforcement of the note, that might be urged against Wilson, if Wilson had never parted with it.—See Lanier

v. Hill, 25 Ala. 554; Clements v. Loggins, 2 Ala. 514; Huckabee v. Albritton, 10 Ala. 657.

The decree of the chancellor is erroneous. It is reversed; and the cause is remanded, with directions to the court below to proceed to carry out the views and principles declared in this opinion.

The appellees must pay the costs of the appeal.

NOTE BY REPORTER.—The foregoing opinion was delivered at the January term, 1859. On application for a rehearing, by the appellees' counsel, the following opinion was pronounced at the ensuing June term:

STONE, J.—When we, at the last term, set aside the judgment we had announced, and held this case under further advisement, we had been led to doubt on two of the points which were pressed in argument—namely, the question of variance between the allegations and the proof, and the question of ratification by Mr. Pierce of the contract, after he had been informed of the fraud practiced upon him in the sale by Mr. Wilson. We entertained no doubt, that Mr. Wilson had most grossly misrepresented the capabilities of his invention, and that, relying on those representations as true, Mr. Pierce had been induced to make the purchase.

It will be readily perceived, that the chief purpose of Mr. Pierce, in becoming the proprietor of the patent for the State of Tennessee, was that he might vend to others individual and local rights to make and use Wilson's patent loom. Hence, saleableness of the invention would be with him an inducement to purchase, little, if any, less controlling than adaptedness to use by hand power or machinery. The representations of Mr. Wilson, which are fully proved, that he had sold and put into successful and satisfactory operation in the State of South Carolina a large number of looms, constructed on the principles of his patent, rightfully would, and no doubt did, determine Mr. Pierce in making the purchase. The evidence forces upon us the conclusion, not that Mr. Wilson, in the enthusiasm of an inventor, innocently over-rated the

capacities and value of his discovery, but that he knowingly and recklessly misstated the facts in every important particular. The statement by him, that several hundred looms had been tried, and had given satisfaction, was the assertion, *as matter of fact*, that the invention would subserve the purposes for which he commended it, and not the mere expression of an opinion favorable to its utility.

It being shown that Mr. Pierce was drawn into the contract with Mr. Wilson by the fraud of the latter, the law arms him with the right to rescind, unless he has, by his after conduct, forfeited that right. It is contended for appellee, that Mr. Pierce, after he was informed of the fraud, has ratified the contract, and thus made it valid, by entering into new stipulations, and dealing with the property as his own.

In Thompson v. Lee, 31 Ala. 292, 303, we thus stated the rule : "If one who has been defrauded, and has become fully apprised of the fraud, afterwards ratifies such voidable contract, or enters into new stipulations in regard to the subject-matter of the contract, inconsistent with his right to insist on a rescission, and there be nothing more in the transaction, he cannot be heard to complain of such fraud." It will be observed, that the rule requires that he shall be *fully* apprised of the fraud.

In the present case, we cannot say that Mr. Pierce was *fully* apprised of the fraud. True, he had discovered some of the representations of Mr. Wilson to be false. He knew the loom had not been tested and approved in South Carolina. He also knew, or was informed, that Mr. Wilson had not met with the success in making sales in South Carolina which he had represented. Still, we are not informed by the evidence that he was *fully apprised* until after his faithful trial to sell the loom, and to have it introduced in the State of Tennessee, demonstrated that it was nearly or quite valueless. He did not ratify the contract, after being *fully apprised* of the fraud.

Nor did he enter into new stipulations, *inconsistent* with his right to rescind. The only *new stipulations* imputed to him, were renewed exertions to obtain a model loom,

and continued, though unsuccessful efforts to test the loom, and introduce it into use. These but show the fidelity with which he labored to carry out his contract in good faith. They did not, and could not, injure Mr. Wilson; and do not estop the complainant from seeking a rescission.

Mr. Pierce was drawn into this contract by a misplaced confidence in the representations of Mr. Wilson. The fact that he did not, on the discovery of one falsehood, distrust everything which Mr. Wilson had represented, may tend to prove him unduly credulous. Credulity is not criminal. On the contrary, it denotes a generous and ingenuous nature. We are loth to declare a rule which converts the best principles of humanity into legal disabilities.

Nor do we find anything in the record to justify us in denying relief to the complainant, because of any supposed variance between the allegations and proof. The contract was one and entire—each stipulation forming an ingredient of one collective whole, although all the parts were not evidenced by one and the same paper-writing. This is fully proved by the witness Pierce, and is strongly confirmed by the testimony of the witnesses Constantine and Hall. Mr. Webb does not prove the making of the contract, but only the execution of the written evidence of it. His testimony is not inconsistent with theirs.

Suppose a sale should be made, by one and the same contract, of a plantation and stock. The sale of the land would be evidenced by writing, because the law requires it to be so. The stock would probably not be mentioned in the writings, because the title to personal property passes by mere sale and delivery, without writing. Yet, we apprehend that no one would contend that the parties had made two contracts.

Nor is there anything in the fact, that two notes or obligations were given by Mr. Pierce. Purchase-money is frequently secured by more notes than one, and yet no one supposes that this destroys the unity of the contract.

The evidences in favor of the proposition that this was one contract, are as strong as in the case above supposed.

In truth, we think the contract charged is precisely and fully proved.

We re-assert and re-adopt the opinion pronounced at the last term by RICE, C. J.