# Bullock v. Tuttle.

*Bill in Equity for Rescission of Contract on account of Fraud.*

90　435
101　702

1. *Rescission of contract; misrepresentations constituting fraud.*—On the sale of a tract of land in Florida, or a contract by which it was taken in part payment for another tract in Alabama, if it appears that the complainant had never seen the Florida land, but trusted the representations of the defendant as to its quality and market value, which were materially exaggerated, he is entitled to a rescission.

2. *Same; laches.*—The lapse of two years, before filing a bill to rescind on the ground of fraud, is not undue delay, when it appears that the land was situated in Florida, that the complainant had never seen it, that he was deceived by the defendant's representations, and that he only acquired knowledge of facts which put him on inquiry about one month before the bill was filed.

3. *Relief under general prayer; decree declaring vendor's lien, under bill asking rescission.*—When the bill prays the rescission, on the ground of fraud, of a contract by which complainant sold and conveyed a tract of land to the defendant, receiving a conveyance for another tract of land in part payment, if the evidence shows fraud authorizing a rescission, but it appears that the defendant had erected valuable improvements on the land conveyed to him, before notice of complainant's dissatisfaction, an entire rescission of the contract

will not be decreed; but, under the general prayer for other and further relief, the court may declare a vendor's lien on the land conveyed to the defendant, for the value of the other tract as estimated in the contract, while ordering a re-conveyance of that tract by complainant to defendant.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 31st October, 1889, by Amos G. Tuttle, against J. A. Bullock and his wife, Mrs. Annie J. Bullock; and sought the rescission of a contract, by which the complainant sold to said Bullock a small tract of land in Macon county, executing a conveyance to Mrs. Bullock, and accepted in part payment of the agreed price, at the estimated value of $700, a conveyance of an undivided half interest in a tract of land in Florida. The bill sought a rescission of the contract on the ground of fraud, alleging that Bullock falsely represented, during the negotiations between the parties, that the Florida land was suitable for the cultivation of oranges, was worth $40 per acre, and readily saleable at that price, whereas the whole tract was not worth more than $200, and only a small part of it was suitable for the cultivation of oranges; that the complainant relied on these representations, knowing nothing about the land, and was thereby deceived and injured.

The contract between the parties, as reduced to writing, was dated May 9th, 1887, and provided for the execution of conveyances, the payment of $650 in cash, and the delivery of possession, between that date and the 1st January, 1888. The legal title to the Florida land was at that time in one A. S. White, who executed a conveyance thereof to said Bullock and Tuttle jointly, which was dated May 30th, 1887, and recited the payment of $1,400 as its consideration. On the 15th June, 1887, Tuttle and wife executed a conveyance of the land in Macon county to Mrs. Bullock, at the instance of her husband, on the recited consideration of $1,300. The cash payment, $650, was made on the delivery of this conveyance, and possession of the Macon county land was delivered to Bullock and wife soon afterwards. The complainant alleged, also, that he had repeatedly asked Bullock "to put the Florida land on the market and sell it, but was assured by him that there were no responsible real estate agents in the county," and was deceived and kept in ignorance by other false and fraudulent excuses calculated to repress inquiry on his part; that he had no suspicion of the fraud which had been practiced on him, or of the real value of the Florida land, "until about the beginning of the present year (1889)," when Bul-

[Bullock v. Tuttle.]

lock called on him to pay his part of the taxes assessed on the land, which only amounted to $1.50 for the whole tract: that he at once instituted inquiries, but was baffled and delayed by the removal of White from the neighborhood of the land, and other circumstances beyond his control, and did not ascertain the facts as to the value of the land and Bullock's interest in it, "until about one month ago," before the filing of the bill; that he immediately demanded a rescission of the contract, offering to pay back the money which he had received, and to convey to Bullock his undivided interest in the Florida land under the deed from White, and that his offer was rejected by Bullock. On these allegations, the bill prayed a rescission of the contract, and added the general prayer "for other and further relief."

On final hearing, on pleadings and proof, the chancellor held that the complainant was entitled to a rescission of the contract, but that a rescission was impracticable on account of valuable improvements erected by Bullock on the Macon county land, before notice of complainant's desire to rescind; and he rendered a decree declaring a vendor's lien on the land, in favor of complainant, for $700, the estimated value of the Florida land, ordering a sale of the land on default of payment within thirty days, and a conveyance to Bullock of complainant's undivided interest in the Florida land under the deed from White. This decree is now assigned as error by Bullock and wife.

SEMPLE & GUNTER, for appellants.—(1.) The decree grants relief in radical opposition to the allegations and prayer of the bill; and it can not be sustained, even if supported by the evidence. The bill prayed a rescission of the contract of sale, and the decree declares a vendor's lien, partially enforcing the contract, as if the bill were in the nature of a bill for specific performance. If the bill had sought such relief in the alternative, it would have been demurrable; for what relief could have been granted under a decree *pro confesso?* The relief granted must be founded on the pleadings and proof, and they must correspond; nor does the general prayer authorize relief inconsistent with the allegations and special prayer.—*Floyd v. Ritter*, 56 Ala. 356; *Harrison v. Nixon*, 9 Peters, 483; *Foster v. Godard*, 1 Black, U. S. 518; *Rubber Co. v. Goodyear*, 9 Wall. 793; *Garland v. Davis*, 4 How. 148; *Grosholz v. Newman*, 21 Wall. 481; *Eyre v. Potter*, 15 How. 56; *Price v. Berrington*, Eng. L. & Eq. Rep. 254; *Wiley, Banks & Co. v. Knight*, 27 Ala. 336, and other cases cited in Brickell's Digest, 704, § 938. (2.) A contract will not be rescinded, when

the parties can not be placed in *statu quo*, unless the clearest and strongest necessity demands it; and a partial rescission is never granted.—*Shields v. Barrow*, 17 How. 130; *Bain v. Mitchell*, 82 Ala. 304; *Sheffield L. & C. Co. v. Neill*, 87 Ala. 158. (3.) The evidence does not sustain the allegation of fraud, the representations being the mere expression of opinion as to value.—*Toulmin v. Juzan*, 9 Ala. 684; *Stow v. Bozeman*, 29 Ala. 402; *Railroad Co. v. Matthews*, 77 Ala. 364; *Tabor v. Peters*, 74 Ala. 90; *Moses v. Katzenberger*, 84 Ala. 98; 78 Ala. 90; 79 Ala. 406; *Crown v. Carriger*, 66 Ala. 592; 124 Mass. 433; 98 Ill. 539; 8 Amer & Eng. Encyc. Law, 638; 90 N. Y. 278; 3 Wait's A. & D. 463; 86 Mo. 293. (4.) The right to rescind, if it ever existed, was lost by *laches*.—90 N. Y. 607; 2 Wall. 87; 17 Wall. 78; 21 Wall. 178; 91 U. S. 588; *Lockwood v. Fitts*, *ante*, p. 150; *Garrett v. Lynch*, 45 Ala. 204; *Scruggs v. Decatur M. & L. Co.*, 86 Ala. 173; *Upton v. Tribilcock*, 91 U. S. 45; 23 Ind. 567; 14 Ind. 49. (5.) The allegation of defendant's insolvency, giving a semblance of equity to the bill, is denied and disproved; and the complainant, if defrauded and injured, had an adequate remedy at law by an action for damages.—*Kelly v. Allen*, 34 Ala. 667; *Lewis v. Cock*, 23 Wall. 469; 1 Spence's Equity, 408, 420.

W. F. FOSTER, *contra*.—(1.) The material issue of fact was, fraud *vel non;* and if the evidence was at all doubtful, which is denied, all reasonable presumptions will be indulged in favor of the chancellor's decision.—*Gilmer v. Wallace*, 79 Ala. 464; *Lewis v. Teal*, 82 Ala. 288; *Spivey v. Allman*, 82 Ala. 378. (2.) The jurisdiction of equity, on the facts alleged and proved, can not be doubted.—1 Pom. Equity, 91, 110, 153, 177; *Cullum v. Br. Bank*, 4 Ala. 35; *Abercrombie v. Rumph*, 12 Ala. 67; *Lanier v. Hill*, 25 Ala. 558. (3.) There was no undue delay in seeking a rescission.—*Foster v. Gressett*, 29 Ala. 395; *Johnston v. Johnston*, 5 Ala. 90.

STONE, C. J.—The present bill was filed by Tuttle, to obtain rescission of a contract of sale, or exchange, by him of a tract of land in Macon county, Alabama, for six hundred and fifty dollars in money, and an undivided half interest in forty acres of land in Sumter county, Florida. The ground on which the rescission is sought is, that Tuttle knew nothing of the Florida land, never having seen it; that he knew Bullock well, and had confidence in him; that Bullock represented that he owned the Florida land, when he did not; that he represented the land (forty acres) as "hammock land, favorable to the growth of oranges," and of the market value of forty

[Bullock v. Tuttle.]

.dollars an acre, when in fact only about ten acres of the tract was hammock, and the tract worth only about two hundred dollars; that trusting Bullock's representations, he traded with him, receiving the half interest in the Florida tract at the price of seven hundred dollars, balance of purchase-money of the Macon county tract. The bill makes averments, which, if true, excuse delay in seeking rescission. Sworn answer was dispensed with.

The answer denies all charges of misrepresentation and fraud, pleads *laches* in the assertion of Tuttle's complaint, and sets up valuable and expensive improvements made by Bullock on the land purchased by him, before receiving notice of Tuttle's dissatisfaction.

While the testimony as to Bullock's representations and their falsity is widely variant, and in many respects in irreconcilable conflict, there is no denial that, when Tuttle and Bullock agreed on the terms of their contract, Bullock did not own the Florida land. He testified that he had taken an *option* on it. He was asked, but did not disclose, the price at which he purchased it. Witnesses do themselves and their cause great injury by evading pertinent inquiries. Bullock surely could have told about the sum the land cost him.

We have examined the testimony with great care, and have reached the conclusion the chancellor did, in reference to the sale by Bullock of the half interest in the Florida land. We hold that Tuttle, knowing nothing of the land, trusted the representations made by Bullock as to its quality and market value; that those representations were untrue, and that they materially overstated both the quality and the value of the land. We hold further that, under the facts of this case, no *laches* is imputable to Tuttle, in not bringing his suit earlier. *Pitts v. Cottingham,* 9 Por. 675; *Younge v. Harris,* 2 Ala. 108; *Juzan v. Toulmin,* 9 Ala. 662; *Pierce v. Wilson,* 34 Ala. 596; *Cofer v. Moore,* 87 Ala. 705.

Under the principle we have declared, we do not question that complainant has shown a right to have the contract rescinded, if the Florida land had been the only subject of the contract. But it was not. The main subject of the contract was the Floyd place in Macon county, Alabama, which Bullock acquired as the result of the trade. On this tract Bullock had made considerable improvements, before he had notice of Tuttle's claim of rescission; and it results that the parties can not be placed *in statu quo*. This forbids entire rescission, if justice can be done without it.

The real transaction was a purchase of the Floyd land by Bullock, to be paid for with six hundred and fifty dollars in

money, and a title to an undivided half of the Florida land. The contract was fully executed on both sides, and title to the undivided half interest became vested in Tuttle. It is shown, however, that the payment, so far as it was effected through the transfer of the half interest in the Florida land, was voidable at the election of Tuttle; and the result of this decree is to avoid it, on account of Bullock's misrepresentations. This leaves that part of the purchase-money unpaid, and Bullock is liable to pay it, to the same extent as if he had made no attempt to do so.—*Warner v. Daniels*, 1 Woodb. & Minot (Mass.) 90.

It is shown that, in the negotiation, the Floyd land was rated and sold at the price of thirteen hundred and fifty dollars; and the proof tends to show it was worth about that sum. And the proof also shows that the Florida land—the half interest in it—was rated at seven hundred dollars, and represented to be worth that much. It follows, therefore, that Bullock owes that sum to Tuttle, and that the interest in the Florida land should be reconveyed to Bullock. And it equally follows, that Tuttle has a lien on the Floyd land for this unpaid purchase-money, and may maintain a bill for its enforcement.—3 Brick. Dig. 612–13, §§ 43, 50.

We have shown that the present bill contains equity, for the enforcement of the vendor's lien. It may be upheld probably on another ground. The title to a half interest in the Florida land is in Tuttle, and a court of law is without machinery for devesting it out of him. Chancery powers are necessary to do complete justice, and to settle the entire controversy between the parties.—1 Pom. Eq., § 110; *Aday v. Echols*, 18 Ala. 353; *Allen v. Young*, 6 So. Rep. 747; *Powell v. Higley*, p. 103, and authorities cited.

The relief in this case is appropriately granted under the prayer for general relief.

Affirmed.