[Sac. No. 1143.    Department One.—March 18, 1905.]

R. M. GREEN et al., Executors, etc., Appellants, v. H. DUVERGEY et al., Respondents.

APPEAL—ORDER DENYING NEW TRIAL—REVIEW—ORDER TO PAY MONEY INTO COURT—NONSUIT ON OPENING STATEMENT.—Upon appeal from an order denying a new trial, the sufficiency of the pleadings or any acts of the court thereon cannot· be reviewed, but an order requiring the plaintiffs to pay money into court as a condition upon which they should proceed to trial, and the action of the court in granting a nonsuit on the opening statement of plaintiffs, may be reviewed as errors of law occurring at the trial, and excepted to by plaintiffs.

ID.—ACTION TO CANCEL DEED—OFFER TO RESTORE CONSIDERATION—IS-SUES—ERRONEOUS ORDER FOR PAYMENT INTO COURT.—In an action to cancel a deed for fraud and undue influence in securing the deed for an inadequate consideration, at a time when the grantor was mentally incompetent, where a demand had been made for a deed before suit, accompanied by an offer to restore the consideration, which was refused, and the offer was repeated in the complaint, and the answer of the defendants sought to defeat the right of action, an order of court requiring the plaintiffs to pay the amount into court before judgment, as a condition upon which they would be allowed to proceed to trial, was erroneous.

ID.—CONDITIONAL OFFER TO RESTORE—DEMAND FOR DEED—TENDER—ACCEPTANCE ESSENTIAL TO ENFORCE PAYMENT.—The offer to restore

the consideration accompanied by the demand for a deed was not a tender in discharge of an obligation of which the defendants could require a performance without the performance demanded on their part; and where the offer was kept good in the averments of the complaint the defendants could not require the money to be paid into court without signifying an acceptance of the offer in accordance with the terms of the demand.

ID.—ERROR IN NONSUIT—AFFIRMATIVE DEFENSE NOT PROVED—OPENING STATEMENT ADMITTED.—It was error for the court to grant a nonsuit where an affirmative defense in the answer was not proved by defendants or admitted by the plaintiffs, and where the opening statement of the plaintiffs contained an offer to prove all the allegations of the complaint and amendments thereto, which were admitted for the purposes of the motion for nonsuit, and established a cause of action.

ID.—ADMISSION BY PLAINTIFFS—CERTIFICATE OF DEPOSIT GIVEN FOR DEED—PLEDGE AS COLLATERAL—PAYMENT OF RESIDUE—OFFER TO RESTORE VALUE.—The admission by plaintiffs that a certificate of deposit given in payment for the deed sought to be canceled had been pledged for a debt of the grantor to another bank, which had cashed the certificate and paid the amount of such debt, and that plaintiffs as his executors had received the residue, does not show any bar to the right to rescind and to cancel the deed for fraud and undue influence, merely because the identical certificate received could not be restored. It was sufficient to offer to restore the value of the certificate, which was not the consideration as such, but merely represented the amount of money specified therein.

ID.—RESCISSION FOR FRAUD—PLACING PARTIES IN STATU QUO—SUBSTANTIAL EQUITY.—It is not an invariable rule that the rescission of a contract obtained by fraud will be denied merely on the ground that the parties cannot be placed identically in *statu quo*. If equity can be done between the parties by placing them substantially in the same position, as far as practicable, equity will grant relief.

ID.—RESCISSION BEFORE SUIT—KEEPING TENDER UNNECESSARY.—The rescission for the fraud of the defendants was accomplished before suit, by notice thereof, with demand for a deed, and an offer to restore the certificate of deposit received. The grantor was not required, in a suit to enforce the rescission, to keep the certificate of deposit intact, nor, if collected, was he required to let the money lie idle in his possession. It was sufficient that he should be able to restore its equivalent, when the defendants should demand it, and tender a reconveyance, or when its restoration should be adjudged by the court.

ID.—RESCISSION NOT WAIVED.—The collection of the money on the certificate of deposit, or the deposit thereof as security for a loan for less than one half its value, did not have the effect to revoke, withdraw, or waive the rescission.

APPEAL from an order of the Superior Court of Trinity County denying a new trial. N. D. Arnot, Judge presiding.

The facts are stated in the opinion.

D. J. Hall, T. B. Dozier, Milton J. Green, and Gavin Mc-Nab, for Appellants.

The law only requires a conditional offer to restore everything of value received by the party rescinding, upon condition that the other party shall do likewise. (Civ. Code, sec. 1691; *Loaiza* v. *Superior Court*, 85 Cal. 31, 32;[1] *Rohrbacher* v. *Kleebauer*, 119 Cal. 260; *Maddock* v. *Russell*, 109 Cal. 426.)  A certificate of deposit merely represents an amount of money in bank. (Bouvier's Law Dictionary.)  A substantial restoration is all that is required. (*Hill* v. *Wilson*, 88 Cal. 97.)

James W. Bartlett, Reid & Bartlett, C. W. Cross, and H. R. Given, for Respondents.

A rescission was waived by taking the consideration and using it as the property of the grantor. (21 Am. & Eng. Ency. of Law, pp. 77, 84, 87.)  A rescission cannot be adjudged when the identical property received has been disposed of and cannot be restored. (Civ. Code, sec. 1503; *Kelley* v. *Owens*, 120 Cal. 502, 511; *Bailey* v. *Fox*, 78 Cal. 389, 397; *Sinclair* v. *Neill*, 1 Hun, 81; *Ross* v. *Titterton*, 6 Hun, 284; *Curtiss* v. *Howell*, 39 N. Y. 211; *Cobb* v. *Hatfield*, 46 N. Y. 536; *Durrett* v. *Simpson*, 3 T. B. Mon. 517;[2] *Schiffer* v. *Dietz*, 83 N. Y. 307-308; *Masson* v. *Bovet*, 1 Denio, 69;[3] *Thurston* v. *Blanchard*, 22 Pick. 18;[4] *Cook* v. *Gilman*, 34 N. H. 561; *Lyon* v. *Bertram*, 20 How. (U. S.) 154, 155; *Garland* v. *Spencer*, 46 Me. 530, 531; *Grymes* v. *Sanders*, 93 U. S. 55-63.

HARRISON, C.—This action was brought by Robert Woodburn to obtain a judgment canceling and declaring void a deed of conveyance of certain mining property made by him to the defendants, upon the ground that it was executed by him by reason of fraudulent representations and undue in-

---

[1] 20 Am. St. Rep. 197.          [3] 43 Am. Dec. 651.
[2] 16 Am. Dec. 115.              [4] 33 Am. Dec. 700, and note.

fluence on the part of the defendants, and at a time when he was mentally incompetent to transact ordinary business, and that upon being restored to capacity and discovery of the fraud he had rescinded the transaction and demanded a reconveyance of the property, offering at the same time to restore the consideration he had received therefor.

The deed of conveyance was executed October 14, 1899, and the notice of rescission and the demand for a reconveyance was made October 24th, and upon its refusal this action was commenced against the grantees therein October 28, 1899. Issues were joined upon the allegations of the complaint, but before the trial of these issues Woodburn died, and in April, 1901, the executors of his will—the appellants herein—were substituted as plaintiffs in the cause. In the complaint it is alleged that at the time of the execution of the deed Woodburn received from the defendants the sum of twenty-five thousand dollars as the consideration for its execution, and that the property was then, and at all times since has been, of the value of one hundred and fifty thousand dollars. In their original answer the defendants denied that they "paid" to Woodburn twenty-five thousand dollars as the consideration for the execution and delivery of the deed "except as follows"; and allege that they were at that time the owners of a certificate of deposit for twenty-five thousand dollars, deposited in the Bank of California in San Francisco, which by its terms was made payable to one of them, and that at the time of the execution of said deed the payee named in the said certificate of deposit duly indorsed the same to Woodburn or his order, and that Woodburn received and accepted the said certificate of deposit in full payment and satisfaction for the execution to them of the said deed of conveyance. In August, 1901, after the appellants had been substituted as plaintiffs in the action, the defendants filed a supplemental answer, in which they alleged that Woodburn, in November, 1899, borrowed from the Bank of Shasta County fifty-five hundred dollars, and transferred and assigned to the bank the said certificate of deposit as collateral security therefor; and that on April 23, 1900, he borrowed from that bank the further sum of three thousand dollars, and that the said bank received and continued to hold the certificate of deposit as such collateral security until after his death; that in

December, 1900, by virtue of an agreement on the part of the executors of his will—the present plaintiffs—the certificate of deposit was paid by the Bank of California to the Bank of Shasta County, and that the latter bank, after reimbursing itself for the moneys loaned to Woodburn, paid the remainder to the plaintiffs as his executors, and that the assets of the estate of Woodburn do not exceed the sum of sixteen thousand dollars. Upon these facts the defendants alleged that the transaction was ratified and confirmed, both by Woodburn in his lifetime and by his executors since his death, and that as they have put it out of their power to restore to the defendants the certificate of deposit which was given to Woodburn, they cannot maintain the present action.

When the case came on for trial, the plaintiffs having previously given notice thereof, moved the court to strike out defendants' supplemental answer, and also presented a demurrer to its sufficiency. During the argument thereon, it was admitted on their behalf that the averments in said answer of the pledge of the certificate of deposit by Woodburn to the Bank of Shasta County as collateral security for loans to him, and its subsequent collection by that bank from the Bank of California and payment of the balance thereof to the plaintiffs, were true. The court thereupon ordered that the plaintiffs immediately deposit with the clerk of the court twenty-five thousand dollars, or a certificate of deposit of the Bank of California for that sum, payable upon demand to the order of the clerk, to abide the result of the trial, and that upon such deposit the demurrer to the supplemental answer would be sustained, and the motion to strike it out would be granted, and that failing to make such deposit the pleading would stand. The plaintiffs excepted to this order, and the hearing of the case was continued until September 30, 1901, and the plaintiffs were given until that day within which to make the said deposit. When the cause was called for trial on that day the plaintiffs' counsel stated that they declined to make the deposit ordered by the court, upon the ground that the court had no authority to require them to make such deposit before a decree was rendered in their favor. The court thereupon ordered that the demurrer to the supplemental answer be overruled, and that the motion to strike it out be denied, to which order the plaintiffs thereupon duly

excepted. The court then stating that it was ready to proceed with the trial of the cause, counsel for the plaintiffs made an opening statement to the effect that they would prove all the allegations set forth in their complaint, and, while admitting that the facts set forth in the aforesaid supplemental answer, so far as relates to the hypothecation by Woodburn of the certificate of deposit and the subsequent cashing of the same, were substantially true, stated that they would also prove that at all times since the commencement of the action Woodburn and his executors had been and were then able, ready, and willing to return to the defendants, or to pay into court subject to their order, twenty-five thousand dollars, either in gold coin or in the form of certificate of deposit for that sum, whenever the court should by its decree and judgment order the reconveyance of the mining properties to the plaintiffs. Upon this statement, Mr. Cross, of counsel for defendants, said, ''Then we ask this court, as preliminary to the proceedings in this case, that you pay that money into court for us.'' And upon the court replying, ''You may take such an order,'' counsel for the plaintiffs excepted thereto, and stated that they declined to pay it upon the grounds previously stated. Thereupon Mr. Cross moved for a nonsuit upon the grounds that they were entitled thereto, by reason of the opening statement and the admission made by plaintiffs' counsel, and the failure of plaintiffs to pay into court the twenty-five thousand dollars which the court had ordered them to pay as a condition of the right to proceed with the trial of the cause. The court thereupon granted the motion for a nonsuit, and ordered that a judgment of dismissal be entered, to which the plaintiffs duly excepted. The plaintiffs afterwards moved for a new trial, which was denied by the court, and from this order the present appeal has been taken.

Upon an appeal from an order granting or denying a new trial, only such matters can be considered as are made grounds upon which the superior court is authorized to grant or deny the motion. Neither the sufficiency of a pleading nor the action of the superior court upon a demurrer thereto, or upon a motion to strike out the pleading or any portion thereof, can be considered. As no evidence was introduced before the court in the present case, only the errors of law occurring at the trial and excepted to by the plaintiff can be considered.

The trial of a cause includes all the rulings of the court and the proceedings before it which conduce to the decision which it makes upon the issues in the case as the basis of its judgment. (*People* v. *Turner,* 39 Cal. 270; *Moore* v. *Bates,* 46 Cal. 29.) Any erroneous ruling, by virtue of which a party is precluded from introducing evidence in support of his cause of action as set forth in his complaint or his defense, is an error of law occurring at the trial. The action of the court in improperly granting or refusing a nonsuit is also an error of law, whether made upon the opening statement of counsel or after the close of the evidence in the cause. (*Craig* v. *Hesperia Land and Water Co.,* 107 Cal. 675.) Under these principles, the order of the court requiring the plaintiffs to pay into court the sum of twenty-five thousand dollars, as a condition upon which they could proceed to trial, and the order granting a nonsuit upon the opening statement and admissions of their counsel, may be reviewed as errors of law occurring at the trial. We are of the opinion that in each of these rulings the court committed error, and that the plaintiffs' motion for a new trial should have been granted.

1. A party to a controversy involving a right to a certain sum of money cannot be required to pay that money into court, unless it is either clearly admitted by him in his pleading or shown in some proceeding in the cause that he has himself no right to retain it, and that his antagonist is entitled to it, or at least has an absolute interest therein. Such admission must be free from any condition, and the antagonist must himself claim an immediate right to the money before he can ask that it be deposited in court. If the admission make the right of the other party dependent upon his performance of some condition, or if the other party does not claim any right to the money, or disputes the existence of the condition, the court will not order the money to be deposited before a hearing in the cause and a judicial determination of the respective rights of the parties, for the reason, as given by Lord Cairns in *Hagall* v. *Currie,* L. R. 2 Ch. App. 449, that "if money is ordered to be brought in, which is not clearly due, very gross injustice may be done, as the defendant may be put to great inconvenience, and afterwards be told that his view of the case was correct." A court ought not to require a litigant to surrender his property to another, or for his

benefit, until there has been a judicial hearing and determination that he has no right to such property; but an order that he pay money into court without such hearing is, in effect, an arbitrary judgment against his right to its possession. The principle upon which the rule rests was very fully considered in *McKim* v. *Thompson,* 1 Bland, 150, wherein it was held that the order for such payment must depend upon a judicial determination, upon the facts as then shown to the court, that the party from whom the payment is asked has no right or title to hold the money, and that he cannot be allowed at any subsequent stage of the cause to contradict or explain away those facts. The same principle was declared by Lord Cottenham in *Richardson* v. *Bank of England,* 4 Mylne & C. 165. (See, also, *Peacham* v. *Daw,* 6 Madd. 98; *Hopkins* v. *McEldery,* 4 Md. Ch. 23; *McTighe* v. *Wadleigh,* 22 N. J. Eq. 81; Daniell on Chancery Practice, *1780.) Section 572 of the Code of Civil Procedure prescribes the condition under which the courts of this state may make such an order to be "when it is admitted by the pleading, or shown upon the examination of a party, that he has in his possession, or under his control, any money or other thing capable of delivery, which, being the subject of litigation, is held by him as trustee for another party, or which belongs or is due to another party." If the money in the possession of the party is not the subject of the litigation, but its payment is an incident thereto, dependent upon the judgment to be rendered in the action, as in the case of an action for redemption, specific performance, accounting, rescission, or the like, the provisions of this section do not authorize such order; and in all cases when it may be made it must appear that the party holds the money as trustee, or that it "belongs or is due to another party." In *Jenkins* v. *Hinman,* 5 Paige, 309,—an action to redeem from a mortgage,—the court denied the defendant's motion for an order that the plaintiff pay into court the amount admitted by him to be due upon the mortgage, upon the ground that the defendant claimed the absolute title to the land, and repudiated the idea that anything was due to him upon the mortgage. *Birdsall* v. *Waldron,* 2 Edw. Ch. 315, was an action by a vendee for specific performance. Prior to commencing the action the vendor (defendant in the action) had refused to accept the purchase money which the vendee

had tendered him. While the action was pending the defend-
ant asked for an order requiring plaintiff to pay into court
the money which he had tendered before suit. The court
denied his application, saying: "The complainant would not
be obliged to pay the purchase money before obtaining a
title, and much less can he be compelled to part with his money
while the vendor is resisting the performance." The offer by
Woodburn to restore the certificate of deposit was not a tender
made in discharge of an obligation on his part which the de-
fendants could require him to perform, on pain of some for-
feiture, nor was it an admission by him that it belonged to
them. The offer was coupled with a demand for performance
on their part, and could not be enforced by them without such
performance. As the offer was kept good by the averments
of the complaint, the defendants cannot demand that the
money be paid into court, unless they signify their acceptance
of the offer in accordance with the terms of the demand.
(See *Irvin* v. *Gregory,* 13 Gray, 215.)

Counsel for respondents have not presented any principle
of law in their briefs in support of this order, nor have they
cited any authority in which such an order has been sustained.
*Miller* v. *Louisville etc.,* 83 Ala. 274,[1] cited by them, involved
only the sufficiency of the complaint as against a general de-
murrer, and although the court, in reply to the objection that
the complaint failed to show that a tender of the money had
been made, stated, that the averment on this point would have
been more complete if the complainant had offered to bring
the same into court, yet, by affirming the order overruling
the demurrer, and holding that the omission was not fatal to
the complaint, it necessarily held that as it was not necessary
to make such averment, the plaintiff could not be required to
deposit the money in court in advance of the trial. In *Sneed*
v. *Town,* 9 Ark. 575, the proposition does not appear to have
been presented in the case, and was not determined or even
discussed in the opinion therein.

2. Although the order overruling the plaintiffs' demurrer
to the supplemental answer was a judicial declaration that the
facts alleged in that answer stated a defense to the plaintiffs'
cause of action, yet the court was not, for that reason, author-

[1] 3 Am. St. Rep. 722.

ized to grant a nonsuit or render judgment dismissing the complaint without any proof of the facts alleged in the answer, or an admission by the plaintiffs that all of these facts were true. In the absence of such admission, all of the allegations were controverted by virtue of section 462 of the Code of Civil Procedure, and it devolved upon the defendants to establish them by evidence, and unless so established the court was not authorized to grant a nonsuit. The order overruling the demurrer disposed of the issue of law presented by the pleading, but the order granting a nonsuit could be made only upon a consideration by the court of the evidence introduced by the plaintiffs, or their statement of what they intended to prove, and a decision by it that it was insufficient to establish the cause of action set forth in their complaint. Such decision, if erroneous, would be an error of law occurring at the trial, and reviewable upon an appeal from the order denying a new trial. The motion by the defendants for a nonsuit upon the opening statement and admissions of the plaintiffs conceded the truth of all the averments in the complaint and the amendments thereto. This was an admission that the defendants had, by means of fraud and undue influence, obtained the mining property from Woodburn at a sum greatly less than its value; that upon discovering the fraud Woodburn had immediately notified them of his rescission of the transaction and demanded a reconveyance of the property, and had tendered to them the certificate of deposit which he had received from them, and that upon their refusal he had commenced the present action; that at all times since said tender the said Woodburn, during his lifetime, and the plaintiffs as his executors since his death, had been able, ready, and willing to restore to them, or pay into court subject to their order, the money which had been received from the defendants, upon receiving from them a good and sufficient reconveyance of said mining property. Upon these facts being shown by the plaintiffs, or admitted by the defendants, the court was not authorized to grant a nonsuit.

The ground chiefly relied upon by the respondents in support of the nonsuit is that by reason of the conduct of Woodburn and the plaintiffs in reference to the certificate of deposit, they had put it out of their power to restore it to the defendants, and that inasmuch as they cannot restore the identi-

cal property which was received from the defendants, they have lost their right of rescission. This proposition, however, is not sustained either by the authorities cited in its support or by the statute. None of the cases cited hold that when a defrauded party has promptly rescinded the transaction and immediately thereafter commenced an action to enforce such rescission, he has been denied relief merely because at the hearing of the cause he was not able to restore the identical property which he had received. Section 1691 of the Civil Code makes no such requirement, but merely requires him to restore "everything of value" which he has received from the other party under the contract. This provision is based upon the equitable principle that he who seeks equity must "do equity"; but the requirement to do equity will vary with the circumstances of the cases in which the rule is invoked, and in the present case the rule will be satisfied by returning the twenty-five thousand dollars in gold coin which the certificate of deposit represented.

The "certificate of deposit" was not the consideration for which the defendants purchased the mining property from Woodburn. They did not agree to give him the certificate of deposit in exchange for the mining property, but they purchased the property from him for the sum of twenty-five thousand dollars, and the certificate of deposit was accepted by him in payment therefor, as representing that amount of money. It would be a reproach upon the administration of justice to concede that equity is too feeble to relieve a party from a fraudulent transaction upon the ground that he has collected the amount of a certificate of deposit, or check, or other obligation which he received in that transaction, and is thus unable to restore the identical thing which he received. It is not an invariable rule that the rescission of a contract obtained by fraud will be denied merely upon the ground that the parties cannot be placed in *statu quo*. If equity can still be done between the parties, courts will grant relief to the defrauded party. (*Neblett* v. *McFarland*, 92 U. S. 101; *Pierce* v. *Wilson*, 34 Ala. 596; *Myrick* v. *Jacks*, 33 Ark. 425; *Gatling* v. *Newell*, 9 Ind. 572; *Tarkington* v. *Purvis*, 128 Ind. 182; *Montgomery* v. *Pickering*, 116 Mass. 227; *Brown* v. *Norman*, 65 Miss. 369;[1] *Paquin* v. *Milliken*,

[1] 7 Am. St. Rep. 663.

163 Mo. 79; *Masson* v. *Bovet,* 1 Denio, 69;[1] *Bank* v. *Peters,* 123 N. Y. 279; Wharton on Contracts, sec. 285.) "Parties engaged in a fraudulent attempt to obtain a neighbor's property are not the objects of the special solicitude of the courts." (*Neblett* v. *McFarland,* 92 U. S. 101.) "Restoration is not exacted on account of any feeling of partiality in regard to the fraudulent party. The law cares very little what his loss may be and exacts nothing for his sake." (*Masson* v. *Bovet,* 1 Denio, 69.[1]) The provision in section 3407 of the Civil Code, that in case of rescission on the ground of "mistake" it is sufficient if the party against whom it can be adjudged can be restored to "*substantially* the same position as if the contract had not been made," taken in connection with section 3408, clearly indicates that such restoration is sufficient in case of rescission on the ground of fraud.

Section 1691 of the Civil Code declares that the rescission of a contract which is authorized by section 1689 of the Civil Code is "accomplished" by complying with the rules prescribed therein, and if such rescission is not acceded to by the other party it may be enforced by action. In such action the court determines whether the plaintiff had a sufficient ground for rescinding the contract, and whether he has complied with the provisions of section 1691. If so, the judgment therein affirms the rescission made by the plaintiff, and determines the rights of the parties as they existed when the rescission was made. "The court proceeds on the principle that as the transaction ought never to have taken place, the parties are to be placed as far as possible in the situation in which they would have stood if there had never been any such transaction." (*Neblett* v. *McFarland,* 92 U. S. 101.) Woodburn, upon the discovery of the fraud, gave to the defendants herein prompt notice of his rescission, and his offer at that time to restore the certificate of deposit made the rescission complete. This offer, though refused by the defendants, followed almost immediately by the offer made in the complaint, entitled him to the aid of the court in securing him the result and fruit of such rescission. (*Loaiza* v. *Superior Court,* 85 Cal. 11.[2]) After he had "accomplished" the rescission and commenced his action for its enforcement, he was not required to keep the certificate of deposit intact, at

[1] 43 Am. Dec. 651, and note.      [2] 20 Am. St. Rep. 197.

the risk of any subsequent inability of its maker to pay the same, nor, if collected, was he required to let the money lie idle in his possession. The refusal of the defendants to accept it when tendered to them, did not require from him more than to be able to restore it or its equivalent when they should tender their deed of reconveyance, or when he should obtain judgment in the action. As was said in the Loaiza case, he was only required to be able to "make the offer good whenever they should comply with his demand." The collection of the money represented by it, or his depositing it as security for a loan of less than half its amount did not have the effect to revoke or withdraw his rescission. Any inference that his rescission was thereby withdrawn is fully overcome by the offer in his complaint, and his ability during his lifetime and that of his executors after his death to restore the twenty-five thousand dollars whenever the defendants should demand it, or whenever its restoration should be adjudged by the court. "Equivocal acts which do not clearly evince a purpose, with complete knowledge of the fraud, to retain the property as his own, will not defeat the right of the person defrauded to rescind. The act must be unequivocal, and must show an election to retain the property after discovering the deceit before the right to rescind is gone. Where subsequent acts are relied on as a defense in a case where fraud is clearly established, the act must stand upon the clearest evidence, and must evince a purpose to waive or forgive the fraud, and must amount to a clear election not to rescind." (*Tarkington* v. *Purvis*, 128 Ind. 182.) "When the original fraud is clearly established by circumstances not liable to doubt, a confirmation of such a transaction is so inconsistent with justice, so unnatural, so liable to be connected with fraud, that it ought to be watched with the utmost strictness, and to stand only upon the clearest evidence as an act done with all the deliberation that ought to attend a transaction the effect of which is to ratify that which in justice ought never to have taken place." (*Morse* v. *Royal*, 12 Ves. 373. See, also, *Pierce* v. *Wilson*, 34 Ala. 606; *Montgomery* v. *Pickering*, 116 Mass. 227.)

To the extent that the court granted a nonsuit upon the ground that the plaintiffs had failed to pay the twenty-five

thousand dollars into court, it erred, for the reasons stated in the former part of this opinion.

The order denying a new trial should be reversed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order denying a new trial is reversed.

Shaw, J., Angellotti, J., Van Dyke, J.

Hearing in Bank denied.