**PREMIERTOX 2.0 and Premiertox, Inc., Real Parties in Interest, Appellants**

v.

**Hon. Vernon MINIARD, Judge, Russell Circuit Court and Kentucky Spirit Health Plan, Inc., Centene Corporation and Jean Rush, Appellees.**

No. 2013–SC–000101–MR.

Supreme Court of Kentucky.

Aug. 29, 2013.

Robert L. Bertram, Anna Stewart Whites, for appellants.

J. Guthrie True, Whitney True Lawson, for appellees.

Opinion of the Court by Justice VENTERS.

Appellants, PremierTox, Inc. and PremierTox 2.0 (collectively referred to as "PremierTox") appeal from the issuance of a writ of prohibition by the Court of Appeals. Appellees are Kentucky Spirit Health Plan, Inc. (Kentucky Spirit); Centene Corporation; and Jean Rush.[1]

PremierTox commenced the underlying action in the Russell Circuit Court, alleging that it was then owed $1,880,293.46 by Kentucky Spirit for services it had provided to Medicaid recipients, and for which Kentucky Spirit had been paid by the

Commonwealth of Kentucky. Upon motion of PremierTox, the Russell Circuit Court ordered Appellees to deposit $1,880,293.46 into an escrow account controlled by the circuit court pending adjudication of the claim. The circuit court concluded that, because the funding for the services originated from state and federal Medicaid monies, the money should be placed in escrow to prevent "significant financial harm to Kentucky citizens" in the event that Kentucky Spirit failed to pay sums ultimately determined to be due and owing.

The Court of Appeals issued a writ to prohibit enforcement of the circuit court's order. This appeal followed. For the reasons set forth below, we affirm the issuance of the writ of prohibition.

## I. FACTUAL AND PROCEDURAL HISTORY

Kentucky Spirit entered into a "Medicaid Managed Care Contract" with the Commonwealth of Kentucky. Under this contract, Kentucky Spirit agreed to manage the Medicaid payments to providers of certain "covered services" received by Medicaid recipients. In return, Kentucky Spirit receives a monthly payment from the state. The payment is entirely funded by Kentucky and federal Medicaid funds.

PremierTox is a laboratory that performs requested urinalysis testing for medical service providers. Through contractual arrangements with Commonwealth Health Corporation, doing business as Center Care, PremierTox agreed to provide laboratory services for Kentucky Spirit's Medicaid recipients. Under the same contractual arrangements, Kentucky Spirit agreed to pay PremierTox for those services.

---

1. Centene Corporation is the parent company of Kentucky Spirit and Jean Rush is the president of Kentucky Spirit. The interests of all three Appellees are aligned, and so, for convenience, we refer to Appellees collectively as Kentucky Spirit throughout this opinion.

Alleging that Kentucky Spirit had failed to make payments as required by the contracts, PremierTox filed suit in the Russell Circuit Court.[2] Motivated by concern that Kentucky Spirit would leave the state and abandon its obligations in Kentucky, PremierTox moved for an order requiring Kentucky Spirit to pay immediately or, in the alternative, to hold funds in escrow until the pending adjudication was completed. The circuit court denied PremierTox's motion for immediate payment, but granted the alternative request. Consequently, the circuit court ordered Kentucky Spirit to deposit $1,880,293.46 into an escrow account controlled by the Russell Circuit Court Clerk. The circuit court held:

> Given the newness of the MCO relationship[3] in Kentucky, the uncertain financial circumstances of Kentucky Spirit, ... and the fact that failure of the MCO to pay any sums properly due and owing would cause significant financial harm to Kentucky citizens, this Court finds it appropriate that Kentucky Spirit be ORDERED to escrow funds sufficient to satisfy the billed amount [$1,880,293.46] which is the subject of this action.

After entry of the order, Kentucky Spirit filed an original action with the Court of Appeals seeking a writ of prohibition to prohibit the circuit court from enforcing the order described above. The Court of Appeals issued the writ after concluding, pursuant to CR 67.02 and *J.R.E., Inc. v. Asbury*, 993 S.W.2d 960 (Ky.1999), that a circuit court has no authority "to require a party to pay a demanded judgment into court in advance of an adjudication that he owes it." *See Asbury*, 993 S.W.2d at 962. The Court of Appeals reasoned that:

> CR 67.02 requires that the party admit that the money is available and is being held as trustee for another party. While Kentucky Spirit may have the funds available, it has not admitted that the funds are held as trustee for PremierTox because it disputes the validity of PremierTox's claims for payment.

PremierTox appeals the issuance of the writ of prohibition upon the grounds that the Court of Appeals erred in its conclusion that the circuit court acted erroneously. PremierTox further argues that the writ was not properly issued because Kentucky Spirit failed to show that there was no adequate remedy on appeal or that it would suffer an irreparable injury.

## II. APPELLATE STANDARD FOR REVIEWING A WRIT OF PROHIBITION

As we have consistently said, "[a] writ of prohibition is an 'extraordinary remedy and we have always been cautious and conservative both in entertaining petitions for and in granting such relief.'" *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 808 (Ky.2004) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky.1961)). Generally, the standard for appellate review of the propriety of a writ is "limited to an abuse-of-discretion inquiry, except for issues of law which are reviewed de novo." *Rehm v. Clayton*, 132 S.W.3d 864, 866 (Ky.2004); *see also Newell Enters., Inc. v. Bowling*, 158 S.W.3d 750, 754 (Ky.2005).[4]

---

**2.** After its initial filing in the Russell Circuit Court, the case was removed to the federal district court but was later remanded back to the Russell Circuit Court.

**3.** The "MCO relationship" referred to by the court is the contractual structure of Medicaid Managed Care Organizations used to imple-ment the delivery of Medicaid services and the payment of Medicaid providers.

**4.** *Overruled on other grounds by Interactive Media Entm't and Gaming Ass'n, Inc. v. Wingate,* 320 S.W.3d 692 (Ky.2010).

■ It is within a court's discretion to grant a writ when it falls within one of two classes of cases:

> The first is where "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court...." ...
>
> The second class of writ may issue where "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." ...
>
> However, [as a subsection of the second class] even where the petitioner does not stand to suffer irreparable injury, "in certain special cases," a writ may issue where "the administration of justice generally will suffer the great and irreparable injury."

*3M Co. v. Engle,* 328 S.W.3d 184, 187 (Ky.2010) (footnotes omitted).

Here, there is no viable contention that the circuit court was acting outside of its jurisdiction. Circuit courts manifestly have jurisdiction over contractual payment disputes where the amount in controversy exceeds the minimum jurisdictional limit of $5,000.00, as this one obviously does.[5] The Russell Circuit Court was indisputably acting within its jurisdiction in this matter. Moreover, this case clearly does not warrant application of the "special case" exception because the administration of justice *generally* would not suffer a great irreparable injury if Appellees were to be required to deposit funds with the clerk of the court before a determination as to entitlement was made. So, our review focuses upon the general prerequisites for issuance of a writ of the second class.

## III. THE REQUIREMENTS FOR ISSUING A WRIT OF PROHIBITION ARE SATISFIED

Under the second class of writs, a court may issue a writ of prohibition if the lower court is acting or is about to act erroneously, *and* the petitioning party has no adequate remedy on appeal or otherwise and would suffer a great injustice or irreparable injury if the writ was not issued. *3M Co.,* 328 S.W.3d at 187. We now address each of the applicable writ requirements.

### A. The Circuit Court Acted Erroneously in Ordering Appellees to Escrow the Disputed Funds under CR 67.02

PremierTox argues that the circuit court's decision to escrow the funds was not erroneous, but was instead a proper exercise of its authority under CR 67.02, especially given the public nature of the funds. However, CR 67.02 provides:

> *When it is admitted by the pleading or examination of a party that he has in his possession or control any money or other thing capable of delivery which being the subject of the litigation, is held by him as trustee for another party, or which belongs or is due to another party,* the court may order the same to be deposited in court or delivered to such other party, with or without security, subject to further direction. If such order is disobeyed, the court may punish the disobedience as a contempt, and may also require the sheriff or other proper officer to take the money or property and deposit or deliver it in accordance with the direction given. Money paid into court under this rule shall be deposited in an interest-bearing account or invested in an interest-bearing instrument approved by the court. At the conclusion of the action, the interest ac-

5. *See* KRS 23A.010(1) and KRS 24A.120(1).

cruing on any such account or instrument shall be paid to the person to whom the principal amount of the account is paid.

(emphasis added).

We recognized in *Asbury* that CR 67.02 is "a codification of the common law rule that a party to a controversy involving a right to a certain sum of money or thing cannot be required to deposit that money or thing in court, unless it is either clearly admitted by his pleading or by proof that he has no right to retain it and that the other party to the action is entitled to it or at least has an absolute interest in it." 993 S.W.2d at 962. In applying CR 67.02 to the dispute in *Asbury*, we held that CR 67.02 requires that the party *against whom the money is sought* must admit, either through his pleadings or testimony, that he is in "possession or control" of that which is the subject of the underlying claim and that the money "belongs to or is owed" to the other party. *Id.*

■ PremierTox and the circuit court have misconstrued the function of CR 67. CR 67 provides the procedural framework that enables parties in possession of money or other tangible property which is the subject of a dispute to: 1) *voluntarily* and with leave of the court deposit the property with the court, CR 67.01; or 2) divest themselves of such property which they admittedly hold "as trustee for another party, or which belongs or is due to another party[.]" CR 67.02. The facts of this case fit neither of these two CR 67 scenarios.

Obviously, Kentucky Spirit is not seeking, under CR 67.01, to deposit money with the court and it has not admitted that it holds the money ordered to be deposited by the circuit court as trustee for another party, or that the money belongs to or is due to another party, as set out in CR 67.02. Indeed, Kentucky Spirit strenuously disagrees with this notion. We thus agree with the Court of Appeals' determination that "[w]hile Kentucky Spirit may have the funds available, it has not admitted that the funds are held … for PremierTox because it disputes the validity of PremierTox's claims for payment." Moreover, the circuit court found "that Kentucky Spirit has raised arguments which, if proven correct, might refute all or a portion of the demands for payment. The parties have yet to have the opportunity to engage in discovery or to provide the Court with evidence showing that such payment is *conclusively due and owing.*" (emphasis added). Thus, the circuit court's own findings further negate the applicability of CR 67.02.

PremierTox's argument and the circuit court's order would effectively convert CR 67 into a substitute for the provisional remedy of pre-judgment attachment established by KRS 425.301 *et seq.* It would also circumvent the safeguards built into those statutes. For example, KRS 425.309 would require PremierTox to execute a bond of not less than double the amount of its claim, a safeguard *not* available under the methods imposed by the circuit court.[6]

The fact that Kentucky Spirit is funded with money from the public treasury to pay for services needed by Medicaid beneficiaries does not persuade us to craft in this case an exception to CR 67.02 for funds originating from a public source. We have examined the cases from other jurisdictions cited by PremierTox to support its argument that public funds should be treated differently. We do not find the

---

**6.** KRS 425.309(1) provides as follows: "An order of attachment shall not be issued [before final judgment] until a bond has been executed by one (1) or more sufficient sureties of the plaintiff in an amount not less than double the amount of the plaintiffs claim."

circumstances of those cases to be similar to the case now before us and, therefore, they are unavailing. In short, we agree with the Court of Appeals that the circuit court acted erroneously when it entered its order compelling Kentucky Spirit to deposit with the court $1,880,293.46 before the adjudication of the claim was completed.

## B. Lack of an Adequate Remedy

■ To obtain a writ, the petitioning party (here, Kentucky Spirit) must prove that it lacks an "adequate remedy by appeal or otherwise[,]" and that without the writ, it will suffer "an injury that 'could not thereafter be rectified in subsequent proceedings in the case.'" *St. Clair v. Castlen,* 381 S.W.3d 306, 308–09 (Ky.2012) (quoting *Bender,* 343 S.W.2d at 801–02). The Court of Appeals did not explicitly address this requirement in its order, and PremierTox argues that no such injury exists here. Kentucky Spirit, however, argues that it lacks an adequate remedy because the circuit court's order would: 1) deprive it of its possession and control of approximately $1.8 million (or more if PremierTox increased its demand during the litigation) without a prior judicial determination extinguishing its ownership of the money and establishing PremierTox's entitlement to it; 2) jeopardize its compliance with its contractual and regulatory obligations as an MCO by advancing funds to Premier-Tox for services that are not "covered services"; and 3) expose Kentucky Spirit to contempt charges and potential sanctions if it fails to comply with the order.

■ "Notably, 'the right to appeal does not necessarily indicate an adequate remedy.' 'In determining the adequacy of another remedy it may be necessary to examine the injurious consequences.'" *Radford v. Lovelace,* 212 S.W.3d 72, 78 (Ky.2006) (citations omitted), *overruled on other grounds by Cardine v. Common-*

*wealth,* 283 S.W.3d 641 (Ky.2009). Hence, the frequently repeated language of our writ standard refers to the lack of an "adequate remedy by appeal *or otherwise."* *St. Clair,* 381 S.W.3d. at 308 (quoting *Bender,* 343 S.W.2d at 801) (emphasis added).

■ Obviously, Kentucky Spirit could appeal from the final judgment that will eventually be entered in the Russell Circuit Court in the event that judgment favors PremierTox. However, that option does not necessarily provide an adequate remedy for the injury. If the writ of prohibition is not issued, the circuit court will divest Kentucky Spirit of its money without a due process adjudication of the validity of PremierTox's claims. The amount of money in dispute is significant. The circuit court's order is essentially a pre-judgment attachment for which Appellees do not have an adequate remedy on appeal or otherwise.

## C. Irreparable Injury

■ "'[G]reat [injustice] and irreparable injury' is something 'of a ruinous nature[,]' that is, some 'incalculable damage to the applicant ... either to the liberty of his person, or to his property rights, or other far-reaching and conjectural consequences.'" *Commonwealth v. Armstrong,* —— S.W.3d ——, ——, No.2011–CA–000931–MR, 2013 WL 645979, at *3 (Ky. App. Feb. 22, 2013) (quoting *Litteral v. Woods,* 223 Ky. 582, 4 S.W.2d 395, 397 (1928)) (citations omitted); *see also Lovelace,* 212 S.W.3d at 78–79 ("The injury should be of a ruinous or grievous nature, or resulting in a substantial miscarriage of justice."). The Court of Appeals found that Appellees would suffer a great injustice in this case because "'to require a party to pay a demanded judgment into court in advance of an adjudication that he owes it' constitute [sic] a gross injustice for

which a writ will issue." *See Asbury*, 993 S.W.2d at 962. The Court of Appeals reasoned that "very gross injustice may be done" by ordering money to be escrowed without adjudication of liability, "as the defendant may be put to great inconvenience" just to later be told that "his view of the case was correct." *See id.* (quoting *Green v. Duvergey*, 146 Cal. 379, 80 P. 234, 237 (1905)).

Justice Cooper's opinion in *Asbury* traces its heritage to *Green v. Duvergey*, 146 Cal. 379, 80 P. 234, 236–37 (1905) and to Lord Cairns's opinion in *Hagall v. Currie*, Law Rep. 2 Ch.App. 449 (1867) ("[I]f money is ordered to be brought in, which is not clearly due, very gross injustice may be done, as the defendant may be put to great inconvenience, and afterwards be told that his view of the case was correct[.]"), and it remains sound to this day. Ordering the payment of money into escrow to fund the payment of an earnestly disputed debt, in contravention of CR 67 and KRS 425.301 *et seq.*, forces the alleged debtor to forfeit the control of its property without a judgment on the merits of the claim. Aside from the deprivation of property and its attendant due process implications, seizing control of such a substantial amount of an individual's or a business's money to assure payment of an unproven claim can, and often does, result in devastating consequences for that individual or business's future operations. Accordingly, Kentucky Spirit satisfied the "irreparable injury" prong of the proper writ analysis.

## IV. CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Appeals to issue the writ of prohibition.

All sitting. All concur.