**PURDUE PHARMA L.P., Individually; Purdue Pharma L.P., as Successor in Interest to the Purdue Pharma Company; Purdue Pharma Inc.; The Purdue Frederick Company, Inc., d/b/a The Purdue Frederick Company; Purdue Pharmaceuticals, L.P.; and The P.F. Laboratories, Inc., Petitioners**

v.

**Honorable Steven D. COMBS, Judge, Pike Circuit Court, Respondent**

**and**

**Commonwealth of Kentucky, ex rel. Jack Conway, Attorney General, Real Party in Interest.**

No. 2013–CA–001941–OA.

Court of Appeals of Kentucky.

Feb. 28, 2014.

James E. Keller, John M. Famularo (argued), Daniel E. Danford, Trevor W. Wells, Lexington, KY, Pamela T. May, Pikeville, KY, for petitioners.

No counsel for respondent.

Jack Conway (argued), Attorney General of Kentucky, Sean J. Riley, Deputy Attorney General, Mitchel T. Denham, Robyn R. Bender, Asst. Deputy Attorneys General, Clay A. Barkley, Michael E. Brooks, Director, C. David Johnstone, LeeAnne Applegate, S. Travis Mayo, Asst. Attorneys General, Frankfort, KY Donald L. Smith, Jr., Asst. Attorney General, Pikeville, KY, for Real Party in Interest.

Before CAPERTON, JONES and THOMPSON, Judges.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF PROHIBITION

THOMPSON, Judge:

Petitioners, Purdue Pharma L.P., Individually, Purdue Pharma L.P., as succes-

sor in interest to the Purdue Pharma Company, Purdue Pharma Inc., The Purdue Fredrick Company, Inc., d/b/a The Purdue Frederick Company, Purdue Pharmaceuticals, L.P., and The P.F. Laboratories, Inc. (Purdue) filed this petition for writ of prohibition seeking to prohibit the Pike Circuit Court from enforcing an order deeming certain requests for admissions served upon Purdue as admitted.

## FACTUAL AND PROCEDURAL HISTORY

On October 4, 2007, the Commonwealth and co-plaintiff Pike County (on behalf of itself and a putative class of all Kentucky counties)[1] filed this action in Pike Circuit Court against Purdue and Abbott Laboratories and Abbott Laboratories, Inc. (Abbott). The Commonwealth alleged Purdue and Abbott's marketing and promotion of OxyContin tablets caused the Commonwealth damages including excessive spending on OxyContin through Medicaid and other Kentucky programs, health care services provided for the diagnosis and treatment of the adverse effects of OxyContin, and law enforcement, educational and social services to combat the abuse and diversion of OxyContin. At the same time, the Commonwealth served Purdue and Abbott with discovery pursuant to the Kentucky Rules of Civil Procedure (CR), including requests for admissions pursuant to CR 36. So the significance of the trial court's order deeming these requests admitted is readily understood, we reiterate those requests most damaging to Purdue's defense as propounded:

**ADMISSION NO. 5:** That Defendant, acting alone or in concert with other persons or entities, including those

named Defendants in this action, misrepresented and/or concealed the true and actual addictive nature of OxyContin, including but not limited to the risk of addiction, actual addiction and other adverse health consequences.

**ADMISSION NO. 9:** That Defendant promoted and marketed OxyContin to general practitioners and other physicians all of whom Defendant knew had less training and experience in treating chronic pain.

**ADMISSION NO. 12:** That Defendant knew how to reduce or eliminate the addictive potential of OxyContin.

**ADMISSION NO. 16:** That Defendant and/or its agents did not warn the general public or practitioners of the true and actual addictive potential of OxyContin.

**ADMISSION NO. 17:** That the misrepresentations and/or omissions by Defendant caused OxyContin to be excessively over-prescribed.

**ADMISSION NO. 18:** That the misrepresentations and/or omissions by Defendant caused damage to the Plaintiff, Commonwealth of Kentucky, by causing it to expend excessive amounts of money on OxyContin through state-funded benefits.

**ADMISSION NO. 20:** That the misrepresentations and/or omissions by Defendant were in violation of state laws.

Purdue and Abbott removed the case to federal court before the answer or discovery responses were due. On October 29, 2007, Purdue filed its answer to the complaint in federal court which included denials to allegations substantively identical to

---

1. Six days after the complaint was filed, an amended complaint was filed deleting all allegations concerning the putative class of Kentucky counties. Pike County settled and dismissed its claims with prejudice in June 2013 and, therefore, only the Commonwealth opposes the writ.

those set forth in the requests for admissions.

For reasons not pertinent to the present issue, the case was not remanded to the Pike Circuit Court until February 8, 2013. On March 29, 2013, the Commonwealth filed a motion to have the requests for admissions served with its complaint almost six years earlier deemed admitted. Three days later, before Purdue received notice of this motion, the trial court entered an order granting the motion and deeming the requests admitted. Realizing the admissions would likely resolve the issue of their liability, Purdue and Abbott immediately filed motions to rescind the order and, on April 12, 2013, just eleven days after learning of the Commonwealth's motion, Purdue filed its responses to the requests for admissions. On April 29, 2013, Purdue filed its motion to withdraw or amend any deemed admissions pursuant to CR 36.02. Abbott filed a similar motion. Following a hearing and briefing, without making specific findings of fact or conclusions of law, and for reasons not otherwise stated, the trial court granted Abbott's motion but denied Purdue's motion. Purdue filed this petition for a writ of prohibition.

## STANDARD TO DETERMINE WHETHER A WRIT IS PROPER

Our Supreme Court has looked upon writs of prohibition and mandamus with disfavor. Kentucky courts "have always been cautious and conservative both in entertaining petitions for and in granting such relief." *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky.1961). The reason for the reluctance to grant a writ is founded on the very nature of the judicial process.

This careful approach is necessary to prevent short-circuiting normal appeal procedure and to limit so far as possible interference with the proper and efficient operation of our circuit and other courts. If this avenue of relief were open to all who considered themselves aggrieved by an interlocutory court order, we would face an impossible burden of nonappellate matters.

*Id.* Our Supreme Court has sternly cautioned: "[T]he specter of injustice always hovers over writ proceedings, which explains why courts of this Commonwealth are—and should be—loath to grant the extraordinary writs unless absolutely necessary." *Cox v. Braden*, 266 S.W.3d 792, 795 (Ky.2008).

Consequently, strict requirements have been set forth to establish entitlement to a writ. "[O]nly after determining that the prerequisites exist will the court decide whether an error occurred for which a writ should issue." *Hoskins v. Maricle*, 150 S.W.3d 1, 18 (Ky.2004). Petitioners must "satisfy one of two tests to determine whether the remedy of a writ is even available." *Edwards v. Hickman*, 237 S.W.3d 183, 188 (Ky.2007).

A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins*, 150 S.W.3d at 10. "The second class of writs includes a subset for 'certain special cases' where 'a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration.'" *Edwards*, 237 S.W.3d at

188 (quoting *Bender*, 343 S.W.2d at 801). The exception is limited and applies only "where the action for which the writ is sought would blatantly violate the law, for example, by breaching a tightly guarded privilege or by contradicting the clear requirements of a civil rule." *Indep. Order of Foresters v. Chauvin*, 175 S.W.3d 610, 617 (Ky.2005). This "exception allows a petitioner to avoid only the requirement of great and irreparable injury, not the requirement of lack of an adequate remedy by appeal." *Id.*

■ In this proceeding, the Pike Circuit Court's jurisdiction is conceded and, therefore, we need only address the second class of writs. "Lack of an adequate remedy by appeal is an absolute prerequisite to the issuance of a writ under this second category." *Id.* at 615. Logically, however, "no adequate remedy by appeal" cannot mean merely the right to appeal. If that were true, the writ procedure would be rendered meaningless because once a final and appealable order is issued, virtually every case may be appealed. *See* Ky. Const. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court[.]"). Therefore, in determining whether an appeal is an adequate remedy "it may be necessary to examine the injurious consequences." *PremierTox 2.0 v. Miniard*, 407 S.W.3d 542, 548 (Ky.2013) (citations omitted).

■ The fact a trial court is proceeding erroneously is not an injurious consequence sufficient to justify a writ. We need to only cite a few examples to demonstrate the point: *Commonwealth, Energy & Env't Cabinet v. Shepherd*, 366 S.W.3d 1, 7 (Ky.2012) (improper intervention can be corrected on appeal); *St. Clair v. Castlen*, 381 S.W.3d 306, 308–09 (Ky.2012) (any error in requiring a retrial in violation of double jeopardy can be corrected on ap-

peal); *State Farm Ins. Co. v. Edwards*, 339 S.W.3d 456, 460 (Ky.2011) (improper referral to a master commissioner and resulting fee could be corrected on appeal); *Mahoney v. McDonald–Burkman*, 320 S.W.3d 75, 78 (Ky.2010) (whether trial court erred by allowing depositions to be taken from witnesses withdrawn from the witness list could be adequately addressed on appeal); *Estate of Cline v. Weddle*, 250 S.W.3d 330, 335 (Ky.2008) (denial of motion for consolidation and leave to amend can be corrected on appeal.); *Nat'l Gypsum Co. v. Corns*, 736 S.W.2d 325, 327 (Ky.1987) (application of the wrong statute of limitation can be corrected on appeal).

■ Consistently, the monetary cost of a proceeding in the trial court has been expressly rejected as a basis for a writ. In *Chauvin*, it was asserted a writ was proper to prevent the expense of defending an action in the trial court that was barred by *res judicata*. The Court was not persuaded and emphasized its holding was the same regardless of the complexity of the litigation and a writ reserved for "truly extraordinary situations." *Chauvin*, 175 S.W.3d at 615. The Court reiterated the bar is set high for a writ to issue and being forced to incur the cost of defending a lawsuit is not a basis for subverting the normal appellate process. *Id.* Defending a lawsuit is "not an uncommon status, however unwanted it may be, and is not confined to litigants. Thus, *the delay incident to litigation and appeal by litigants who may be financially distressed cannot be considered as unjust, does not constitute irreparable injury, and is not a miscarriage of justice.*" *Ison v. Bradley*, 333 S.W.2d 784, 786 (Ky.1960)(emphasis added).

## WHETHER PURDUE IS ENTITLED TO A WRIT

■ When possible, courts are to consider the adequacy of a remedy by appeal

and the existence of great and irreparable harm as separate issues. However, it is unavoidable they sometimes overlap. *Chauvin,* 175 S.W.3d at 616. Because of the nature of Purdue's arguments, some overlap in our discussion is inevitable and whether Purdue has an adequate remedy on appeal dependent upon the harm caused by the trial court's ruling.

■ Purdue argues the trial court's order leaves it "hamstrung" on the issue of liability because, as a practical matter, it will not be able to survive the effect of the admissions as to liability leaving damages as the only remaining issue. Purdue points out if the case is tried, it faces a potentially enormous damage award. Although an appeal may be filed, any favorable result would be of little benefit and not repair the damage caused by the admissions because future Pike Circuit Court jurors would be tainted by post-trial publicity. In its view, potential jurors would deem Purdue as having admitted liability and it would be impossible to "un-ring that bell." It also argues a massive judgment would cause irreparable damage pending appeal because it would have to post an enormous supersedeas bond. Additionally, it points out that by virtue of the admissions, discovery will now be limited to damages and, therefore, after reversal and remand and the passage of time, important evidence regarding liability will become stale, or forever be lost, potentially prejudicing all litigants. Faced with the likely prospect of an enormous damage verdict and the additional collateral consequences of an appeal, Purdue argues it is in an unenviable position of choosing between a trial and a settlement regardless of the merits of the Commonwealth's claim.

Purdue makes compelling arguments in favor of a writ. The damaging effect of the admissions is undeniable: Although at trial, Purdue may "explain, clarify, or elu-cidate" the admissions, there is no question the admissions pose a formable obstacle to victory. *Berrier v. Bizer,* 57 S.W.3d 271, 280 (Ky.2001). The financial stakes are high whether Purdue goes to trial or settles. We agree that through its pre-trial ruling, the trial court has taken dispositive action regarding liability, a ruling that if left to stand, will undoubtedly factor into settlement negotiations and place Purdue in a difficult position at a trial.

Although we refrain from commenting on the merits of Purdue's claims regarding whether the trial court erred in denying its motion to permit withdrawal or amendment of the admissions, our judicial conscience cannot ignore that a legitimate question is presented whether the deadline passed for responding to these admissions after remand from the federal court and without any prejudice caused to the Commonwealth. Under the circumstances, it would seem judicially economical and expedient to grant the writ and resolve this issue. Other jurisdictions have followed that course.

In *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), the West Virginia Court held a writ of prohibition should be granted to examine whether it was proper to transfer actions to another county and, in doing so, examined "first, the adequacy of another remedy such as appeal; second, economy of effort among litigants, lawyers and courts." *Id.* at 118, 262 S.E.2d at 748. When a writ is brought in good faith based on a trial court exceeding its legitimate powers, the reviewing court "weigh[s] . . . the gravity of the harm to be caused by pre-trial error versus the efficacy of an alternative remedy." *Id.* at 119, 262 S.E.2d at 748. The Court observed the adequacy of a remedy by appeal "[will be] wholly theoretical and not at all practical[,]" especially when applied to "a cru-

cial but erroneous legal ruling[.]" *Id.* at 120–121, 262 S.E.2d at 749.

Other states have followed similar reasoning that a writ should issue where "the action of the court relates to a matter that is decisive of the case[.]" *Thermorama, Inc. v. Shiller*, 271 Minn. 79, 83–84, 135 N.W.2d 43, 46 (1965). *See also State ex rel. Golden v. Crawford*, 165 S.W.3d 147, 148 (Mo.2005) ("Prohibition, while being a discretionary writ, may be appropriate to prevent unnecessary, inconvenient, and expensive litigation."); *Davis v. Traub*, 90 N.M. 498, 499, 565 P.2d 1015, 1016 (1977) (writ appropriate where "costly delays or unusual burdens of expense would result").

The discussion by the Texas Supreme Court lends support to Purdue's petition for a writ:

> [A]n appeal will not be an adequate remedy where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error. It is not enough to show merely the delay, inconvenience or expense of an appeal. Rather, the relator must establish the effective denial of a reasonable opportunity to develop the merits of his or her case, so that the trial would be a waste of judicial resources. We recently held that when a trial court imposes discovery sanctions which have the effect of *precluding a decision on the merits of a party's claims*—such as by striking pleadings, dismissing an action, or rendering default judgment—a party's remedy by eventual appeal is inadequate[.]

*Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992).

Following this precedent, in an unpublished opinion, the Texas Court of Appeals granted a conditional writ in circumstances almost identical to those before us.

> Although Real Party in Interest Plaintiff, the trial court, and American Gunite all recognized the merits-preclusive effect of the deemed admissions, and although no evidence was presented to the trial court of flagrant bad faith or callous disregard for the rules, the trial court denied American Gunite's motion to set aside the deemed admissions. We hold that the trial court abused its discretion by denying American Gunite's motion to set aside the deemed admissions because the deemed admissions were merits-preclusive and the record contains no evidence of flagrant bad faith or callous disregard for the rules by American Gunite. Accordingly, we conditionally grant the petition for writ of mandamus. We order the trial court to withdraw its August 19, 2011, order denying American Gunite's motion to withdraw deemed admissions and to enter an order permitting withdrawal of the deemed admissions. The writ will issue only if the trial court fails to comply within ten days.

*In re American Gunite Management Co., Inc.*, No. 02–11–00349–CV, 2011 WL 4550159, \*2 (Tex.App.-Fort Worth 2011) (citations omitted).

If we were writing on a clean slate and the law of writs was not so firmly entrenched by our Supreme Court, we would be inclined to follow the reasoning expressed by our sister state courts. However, we do not believe this Court has authority to carve out an exception to the writ requirements as firmly established by our Supreme Court. It is a fundamental maxim of Kentucky appellate law: "The Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court." Rules of the Supreme Court 1.030(8)(a).

Under the current law, we must conclude although Purdue faces enormous fi-

nancial liability, the trial court's ruling may be decisive as to liability, and even incorrect, Purdue is in the same position as every other litigant who faces an adverse decision by the trial court: Settle the litigation or go to trial and, if a judgment is entered against it, appeal. Its concerns regarding the expense of litigation cannot justify this Court's intervention in the trial court process. Purdue's concerns regarding prospective jury bias if the case is remanded by an appellate court is likewise faced by any litigant in a high-profile case and one curable by proper voir dire or change of venue. In conclusion, as compelling as Purdue's arguments may be to this Court, we can find no precedent in this Commonwealth for granting the relief requested.

Having considered the petition, the response, and being sufficiently advised, the Court ORDERS the petition be, and it is hereby, DENIED.

Purdue filed a motion to advance consideration of its petition. Having considered the motion, the response, and being otherwise sufficiently advised, the Court ORDERS the motion be, and it is hereby, DENIED AS MOOT.

ALL CONCUR.